Your Honor, it is the case on the docket 2-16-0266 before the State of Illinois, Plaintiff Appley v. Treanor v. O. Parham v. McCutcheon. Are you on behalf of the defendant's parents, Mr. R. Christopher White? Are you on behalf of the plaintiff's family, Mrs. Sally A. Smith? Are you both ready to proceed? Proceed when you're ready. Good evening. May it please the Court, Counsel. I'm Chris White. I'm representing Treanor v. Parham on behalf of the Office of the State Appellate Defender. The parties agree, I believe, that both of the 16-year-old defendant's convictions here for vehicle theft conspiracy related to the Grand Van, which are Calls 6 and 7, cannot be sustained where both of those convictions were based on a single case. Yes. Did the State conceded that? Yes. However, the defendant further maintains that because the State proved the existence of only one conspiracy, the vehicle theft conspiracy conviction based on a Chevy Suburban must also be vacated. And also because the State failed to prove that the defendant agreed with his co-defendants to perform the elements of aggravated unlawful possession of a stolen motor vehicle, as is required to sustain the conviction for the remaining Class 1 vehicle theft conspiracy related to the Grand Van, that must be reduced to a Class 2 offense. Wouldn't that be a defense for the co-defendants who weren't driving, that there was not an agreement? I mean, wasn't there testimony at some point that someone said to him, slow down and pull over or something to that effect? Yes. In fact, that kind of goes to the heart of the issue here. That usually is when conspiracy is charged, I believe. It's not usually charged against a principal. I think it was charged against a principal in this case because it's the only way that the State would be able to get consecutive sentences. But it doesn't prevent it. You're not saying it prevents it, right? No. Not in all cases. But as Justice Shuster said, in this particular case, there's actually evidence that is contrary to the existence of a conspiracy here. And that is the comments of, I believe it was, a co-defendant in Tye Tower, I believe, that said, scoot over, slow down. Well, but it could have been, as was argued by the State, it could have been when he went into the other lane and then brought it back over, correct? Because at one point he went into the opposite lane. Well, I mean, we don't know the context other than the fact that this guy is traveling at this high rate of speed and you have a co-defendant saying slow down. But what we do know is there's not any evidence to suggest that the parties ahead of time agreed that they would elude a police officer by speeding or disobeying stop signs or anything of that. I think when the evidence is taken in favor of the State, I think there's probably evidence here that there certainly was a vehicle theft conspiracy. But just one, and it was for the purpose of possessing various vehicles. Are you saying it extended, in your view, the evidence would be that it extended more than one day or just that day? It would have extended, as far as we know, one day. There's no evidence that there was any more than one agreement. Wasn't one of those vehicles taken the day before, though? Yes. So are you saying that's part of the evidence which showed that that is part of that agreement, or is that different? That's the same agreement. It appears that, you know, as long as the State made the decision to charge us as a conspiracy rather than as a principal, they bear the burden of proving the elements of the offense, which is that these parties agreed to the specific act. And the act here, I think, is one act. I don't think there's any evidence to suggest that they – that one conspiracy ended, then another conspiracy started, then another conspiracy started. If there's a conspiracy among these three people, that seems to be what they do is they go out and take cars or at least come into possession of cars, or some evidence that all of the cars weren't taken by these three, but they at least come into possession of these cars. Well, could one make a reasonable inference, as perhaps the jury did in this case, that, you know, they were in it from the get-go. They were all in it together every step of the way, so it would not be unreasonable to believe, and certainly a reasonable inference can be made, that they were in it in the fling and looting as well. Is that – is that an unreasonable inference to make? I think it is here. I don't think you can make that inference when it comes to an element of the offense where the state is required to show an actual agreement, especially, as you mentioned, that there's some evidence to the contrary, that it's at least suggested that these people perhaps, at least one of them, because I think one of them didn't remember what happened due to his injuries, but one of them specifically said, a state's witness specifically said, you know, I mean, we certainly can't find that there was an agreement to elude the police, and I don't – I think that actually goes to defeat the existence of such an agreement, although there's evidence to support the Class 2 agreement. The Class 1 agreement, I think, is – or Class 1 felony, rather, I think, is really without any support. And so the agreement to commit the offense of aggravated unlawful possession, where they actually have to show that the parties conspired to willfully refuse to obey a police officer's directive to stop the vehicle by increasing the speed or otherwise attempt to elude the officer, just isn't here. I think the state, when it talks about sort of the duration of the conspiracy and refers to acts in furtherance, is really talking about evidence to support the existence of a conspiracy, which we believe is here as far as the Class 2 goes. But there is no evidence, even those acts in furtherance, or any evidence really on the record at all to suggest that he was guilty of the Class 1 offense. Theft of one car, theft of 20 cars, they're all evidence to support the fact that there was one conspiracy. When did the conspiracy begin and when did it end, in your opinion? It agreed – or it began before the taking of the first car in this sort of series of events that we have here. Which car do you refer to, then? I'm sorry? When you say the first car, which one do you think is the first car? Is it the Grand Dam? I believe the Grand Dam. But when they – just before they – I don't think the conspiracy would go all the way back to when they were arrested back in Wisconsin for doing exactly the same thing with the same participants. I think it would be more recent than that. But either the Grand Dam or the Suburban would be the first one, and it would have ended at the point they came into possession of those cars, actually. For the purposes of – But isn't it all their conduct? They don't just – it's not like a game, like tag, you're it. I'm in possession of the car and now the crime is over and I'm done. Does the conspiracy continue until they do something with the car, sell it to someone, give it back to the other person, or somebody else uses it to commit yet another offense? I don't think – I mean, it might, because you have a situation where they're taking a bunch of cars, and so that's a vehicle theft conspiracy in a larger sense. But the offense here is to possess vehicles, and once they possess that vehicle – But don't they continue – my point is, don't they continue to possess it right through the time that this accident occurs? Well, right, they do continue to possess it, but even if that's true, it's not a proper class one offense, not because you don't have that extra element that was proved, but also because it's not the agreement that caused the harm here for the triggering offense. The agreement by itself is not, as the judge even said, there's nothing wrong with it, there's no harm that comes from – I'm paraphrasing, but you know, a bunch of guys sitting around planning to steal cars. The harm comes when you essentially flee and elude, and we would suggest that that is actually the triggering offense here, to use the term very loosely because it's a term of art. It's not a triggering offense, but the harm here actually occurred during the fleeing and eluding and occurred possibly during the A.D.U.I., but it did not occur during the agreement to possess a stolen motor vehicle. So you don't think that there's sufficient evidence for the jury to infer that this agreement to steal cars evolved into what came thereafter, the fleeing and eluding, the failure to stop at stop signs, et cetera, et cetera. I don't think in the case of a conspiracy they can make that inference, that is that this conspiracy would have evolved without showing that there was some sort of agreement to the point that they stole a vehicle, or before that point they possessed a vehicle, that also included at that time, at the time of the conspiracy, that they were going to elude police officers by speeding. Would it be reasonable for a jury to infer that after the commission of a crime it is always part of the agreement to escape being caught? I don't think they can. In fact, in this case you have evidence, at least arguably, that they didn't want to do that, that they didn't want to drive in this reckless manner. I don't think you can make an inference regarding the element of the offense like that and say, well, if they were fleeing and eluding, therefore they must have at some point agreed to flee and elude, especially where you have the power. Not saying that they agreed to flee and elude, but would you agree that the jury could infer that when you commit a crime, part of the commission of that crime and the agreement to commit a crime is to then get away with it? Or to conceal their crime, as in the Denson case. Well, that could be, but the charge specifically required that the state prove a particular element that they had agreed to willfully refuse to obey a police officer's directive to stop the vehicle by increasing. And the state made that choice of charging this as a conspiracy rather than as a straight, I don't want to go for the fleeing to elude or something like that, but they pursued the conspiracy charge in order to get the imposition of an executive sentence. And I think when they did that, they're bound to prove every element of that offense. I don't think you can just say that because they did flee, the jury must have inferred from that behavior that they had all agreed at some point to flee. So how do you distinguish the Denson case that the state relies upon, where the court found there was criminal conspiracy, started as a robbery and then turned into a murder, and then so they tried to conceal the crime, which is kind of what they were doing here, no? How do you distinguish that? Well, in that case, they were. The element that they, I guess the actual event had not ended because they had not gotten away completely. The agreement in that particular case was to steal money. To commit a robbery. Right, commit a robbery. Not to commit a murder. Correct? Right. But a murder was committed. Right. But the actions in that case, though, I think it was a little different because you had at least the parties were, if I have this one right, it was shown that the parties in that case were, had agreed to commit the robbery and that there was some sort of, say, smelter or knob. The conspiracy element of it was, I'm not sure if that's correct. But there, I mean, I don't, there it was an attempt to get away. Here it's an attempt to get away. But here you have, the difference here is that you have the means of getting away. The car, the vehicle here was in the complete and exclusive control of the defendant. It wasn't in the control of the others. So to say that the, that they agreed to conspire, they agreed to flee and elude, I don't think you can find here because there would need to be specific evidence because you don't have an action by the other two parties. Although it's a little odd because you actually have the principal here who's being charged with conspiracy. But you don't have a situation in this case where you have any actions on behalf of the other two parties, of the other co-conspirators, alleged co-conspirators. Yeah, that's all, that all has to be reasonably inferred. And you're saying that the statute does not allow therefore to be reasonable inference. Is that what you're saying? I don't think the conspiracy statute, because it's based upon the essence of the conspiracy, is the agreement. So for a conspiracy statute, I think you do have to show that agreement. You may not have to in certain other statutes. But here the act, the offense, is the agreement between the parties to commit the act. That can be inferred though, can't it? Well, I don't, in this case, again, I don't think you can infer the fact that they, you know, sped off here because there's just not, I don't, the agreement is made at the time, or the conspiracy occurs at the time the agreement is made. And I don't think there's any evidence in the record to suggest or even to infer from the fact that these three people at some point agreed to the very specific element that required an aggravated unlawful possession to elude the police. Well, let me ask you this. They're all kind of peeking into cars at the church. And then a police car pulls up. And they all run and jump into the car and take off. Do you think somebody in that car was saying, oh, don't take off. Please, stay back. Couldn't the jurors infer that everybody who jumped into the car after being caught peeking into windows at a church might have all been simpatico and saying, let's go? Well, they probably could. But whether they were all in agreement saying, let's go, let's get away from the police, whether they were all in agreement saying, let's do it at 90 miles an hour down at Alpine Boulevard or an Alpine Road in the middle of the road is an entirely different thing. And because the state charged it in this way as a conspiracy that that particular element has to be proved, I don't think that it can be relied upon the fact that they did in fact try to get away or in fact the driver in this case, because the car is completely in his control, even though you have one co-defendant, state's witness, who actually says stop the car. It's within his complete control. I don't think you can infer from that, then, that all of the parties agreed to that particular type of conduct to evade the police by speeding and by disregarding traffic control devices, which is specifically required in this case in order to sustain a conspiracy conviction. Thank you. I have one other question for you. Is the evidence of the theft in Beloit, South Beloit, that when confronted with the police, the defendant, again the driver, reaches high rates of speed to elude the police at that time and one of the same co-defendants was in his car? Does that help or hurt your argument? I don't think they're really one way or the other, because in that case he wasn't charged with this particular offense. I don't know if there was an agreement at that time to do this. The state didn't charge us with that at the original South Beloit case. I think that's part of the problem with this situation is it's trying to fit into a conspiracy charge, something that isn't really a conspiracy charge, especially given the fact that it's the principal who's on trial here. Usually conspiracy is used in order to get co-defendants, and so it's really more of a straight fleeing and running, a straight A-B-Y. But if the state were to pursue those two charges, then that triggering offense is for purposes of consecutive sentences. So I think as far as South Beloit goes, I don't think there's any evidence necessarily that they did it, but I don't know because it didn't come out at that time. One more quick question. As far as the length and extent of the conspiracy, if the conspiracy begins with possession of the vehicle, isn't it logical then to say that the conspiracy ends when they un-possess the vehicle, when they're removed from possession of the vehicle? And that extends that entire time? I think the conspiracy actually begins before possession of the vehicle because the conspiracy is to possess a vehicle rather than to steal a vehicle. If it was to steal a vehicle, that might be true, but to possess a vehicle, I think it's actually before that time. I think the conspiracy would then end at that particular point, when they are in control of the vehicle and have possession of the vehicle, that which they conspired to do under the Class II offense, where you don't have the extra element, where it's simply to conspire with another in order to possess a stolen vehicle. I think it would end at that point in those cases. Thank you. Thank you. Good morning, Your Honors, Counsel. May it please the Court. I'd like to address first the multiple versus single conspiracy. In this case, we believe that the evidence does show and that the trier of fact found that there were multiple conspiracies. And in so determining them, we look at that determination. It's for the trier of fact. In this case, that was the Court. We look at the trier of fact's determination and determine under Collins whether a rational trier of fact, looking at the evidence in the light most favorable to the State, could have so found that there were multiple conspiracies. In this case, and in every case, we're really looking at the conspiracy, the scope and nature of the agreement. Why would he charge the principal with conspiracy? Your Honors, I don't know for sure why they did that, and it may have something to do with sentencing, of course, in terms of the sentences that were available for something that ended up in the death of the victim. But certainly here we have all the elements of a conspiracy, and so it is properly charged. How many conspiracies could the State have charged him? With just this conduct that was here? I believe that they had two, and here is the way I see the multiple conspiracies. They have one. The first charge is conspiracy to possess the Chevrolet Suburban. And that determination and that agreement, I believe the evidence shows, was made the morning that this incident occurred, the morning that they went out and stole that vehicle. And what we look at for the nature and the scope of the agreement, before I get to the other one, is we look at really generally we don't have direct evidence of what the agreement was. Rarely do we have that. We might have some. We have some from Tyler Manning as to an agreement to go commit burglaries while possessing a stolen vehicle for the afternoon. But we don't have anything as to the morning outing, the first outing that they took on that day. And that's typical in a conspiracy. This is clandestine effort by them. They're not going to necessarily put something in writing or something that we can prove. What we have are actions that take place afterwards showing concerted actions by the three men, which then show us circumstantially and through inferences what the scope and nature of the agreement was. What's the scope and nature of the agreement to elude the police officers, go through a stop sign, because he was charged with violating a stop sign, speeds up to or over 90 miles an hour, et cetera, et cetera. Do you have to prove, as your opponent states, each and every element as a conspiracy? And if not, why not? Well, you don't have to prove by direct evidence that they were all together and talked about this. And that seems to me what the defenses are doing, that they actually have to. No, answer the question, though. What is the proof? I'm with you that you're not going to get a statement saying, here's our agreement. Right. So the proof is this. The proof is that they take this vehicle, this Grand Am. They know it's stolen, right? They have stolen it or somebody in the group has stolen it the night before. That's when that conspiracy started to continue. They're possessing it. They take that unlawful taking of that car, and then they take that car and they go to commit a burglary. When they are spotted, which is, of course, not unreasonable to believe that they're going to want to remain undetected and remain in possession, their idea is that they're going to possess this car. At the time that officer showed up, she didn't even know that the car was stolen. She just knew they were seen looking into other cars. So they are now going to do actions which will lead them and let them remain in possession. That's their purpose. You have to look at the purpose or the goal of the conspiracy. What was it here? To possess the vehicle. There is a logical inference, first of all, and this is just one fact, there's a logical inference that once you want to possess it, that you will want to remain in possession and that you are doing steps to possess the vehicle. Those steps may change because you've now been spotted and turned into a fleeing, but that's still to remain in possession, to possess the vehicle, which is what is charged here. Now, as far as the aggravating circumstances and as far as the fleeing, not only is that relatively foreseeable that something like that could happen, we do have Butler, who was with the defendant in a prior date, like over a year before that. That's in South Beloit. In South Beloit. And he was with the defendant when something similar happened. Now, there was no evidence that they were doing anything other than riding down the street, but they were possessing a stolen car when they were doing so. They had some girls with them. They were heading down the street when a police officer spotted them and apparently on a tip, or we don't know, or whether it was that they ran the place, they now know that the car is stolen and they start a pursuit. When that happens, what does the defendant do? He takes off, just as he did here, at a high rate of speed. He also goes through a traffic signal. To some extent, it's a traffic signal. When he knows the police are, you know, alerted and have the siren going and are trying to stop him. It's very similar. Now, Butler, knowing that, and here's the other fact, is in the car at the time they were at Holy Family Church. He knows now. He sees the two men running back to the car to get at Hightower and the defendant into the driver's seat. Does he get out of the car? No. Does he ever, Hightower, excuse me, I'm not sorry, Butler, does Butler ever say, you know, I have signed up for this. Get me out of here. Did he ever get out of the car? And when he saw them approaching to run on his own, there's nothing normal actions to take him to show that he is not a willing participant in this chase. Hightower makes a few statements, but those statements are shown to relate to what was occurring during the fleet, which was that the defendant drove into the oncoming lane of traffic. This is reported by the police officer and shown on her camera. And at that point, or sometime around that time, he says, pull over, and he states in his testimony he did pull over. Well, he never pulled over to the side of the street, so what he's talking about is pull over means back into the lane of traffic in which we're traveling. So when he says that that was done, that's clearly an indication that what he was talking about is don't drive, you know, towards opposing traffic. He also says pull over and slow down. He doesn't say stop. He doesn't say I want to get out. He ran to the car after being spotted. Obviously, his intent is to get in the car to flee. It's not to run away on foot or to stay there and talk to the police officer or anything of the kind. From those facts, you can look back and say this is part, again, another inference to be drawn, that these men were in it and were in it through the fleeing and the actions it took to flee or try to flee from the police. So your position is, as the court's position was, that the conspiracy was not complete until the collision? Exactly. It was not complete because they were in possession. That's what they wanted. That was their goal. And they took possession and they never let go. And that possession ended or terminated, you know, against their will, basically. When they abandoned the car. Yes. And some were taken off. Two of them were taken away by medical personnel. And the defendant, of course, abandoned by running out of the car and running from the police. That's where that ended. Now, in terms of whether there's a multiple or a single conspiracy, obviously this is a case where there are similar purposes, sometimes the same purpose, going on over and over by these people. But I think the evidence that supports the trial court's determination that there were multiple conspiracies and not just a single one comes from the fact that when they first go out to steal a car in the morning, they go to a parking lot, find the Chevy Suburban, Butler gets in, drives, the defendant, you know, and that's what they're charged with is the possession of that vehicle. And the defendant then gets in another vehicle. They go back to Tyler Manning's house. Now, they're doing that to retain possession. And they leave the car there and leave both cars there. And then they talk to Tyler Manning. What does Tyler Manning say? He doesn't, by virtue of the fact that they've taken a stolen car, immediately assume that they are continuing on and, you know, doing more of the same. He wants to know what are you doing this afternoon to the guys because he's saying to them here, he's discussing with them what they might be doing that he might want to join in. They then say, we're going to take this car, the new car, the Grand Am, and we're going to go out and commit burglaries, at which point Manning's girlfriend tells him, no, you're not going, and he determines he's not going, and he does not join up. That's a natural point. When they drop off that first car, the Chevy Suburban, their possession, that they are saying this is, you know, the continuing possession, but they are taking a break in a sense. And then we have Manning showing that this is not all they do in these stolen cars. They actually use these stolen cars for transportation. What other facts back that up? None of the defendants had their own cars. These are young kids. None of them own their own cars. This is their ride. What other evidence do we have that they sometimes ride around? We have the South Beloit incident. They're riding around with a couple of girls in a stolen vehicle. So that is all evidence which the court could have determined showed that this was a new conspiracy starting at that point to go commit robberies in a different parking lot. Yes, it's the same or similar behavior, but the court is entitled, as a trier of fact, to look at all the inferences, can even determine that there are overlapping purposes, and I've cited some cases in my brief to them. The shorter case says that there could be similar purposes of numerous separate adventures of a like character. That's what we have here. We have these men, basically, or boys acting on impulse. Let's do this today. Okay, we've done that. Do we want to do some more? Oh, let's go do this. And now sometimes, you know, in the case of counts six and seven, they really start out with one plan, and that's evident because they say they're going to go commit these burglaries, and they do that, and all the conduct is the same all the way through until they flee and collide with the victim. But in this case, there is enough evidence for the trial court to have determined that there were multiple conspiracies, and we ask that this court so find. And that the defendants all agreed that this particular defendant performed sexual elements of the offense of aggravated unlawful possession of a stolen lumber vehicle. Are you saying by reasonable inference or by totality of the circumstances you can show that? Yes, the totality of the circumstances show that they did nothing to separate themselves at that time, which they would have, could have, should have, if they weren't intent on fleeing and going through with, you know, the other steps that, you know, were the aggravating circumstances, basically. Don't you have to show that they agreed to that? Well, the agreement is almost always determined by looking at the face of what they do and then looking backward and saying, this is an agreement. Isn't there a stretch to say that they would agree to the aggravated fleeing and eluding, perhaps fleeing, but an aggravated fleeing and eluding, to the extent where he causes an accident? Well, I don't know that they have to foresee and agree to causing a collision. That's, you know, that's a separate, you know, that's a separate idea, and I don't believe they have to do that. They're only agreeing with the acts which then caused the infliction of severe bodily injury. And they did agree to that. So it's one continuing. Exactly. It's one continuing act of possession from start until the collision when there was an abandonment by one and a termination by the others, you know, involuntary termination. And for that reason, then, I mean... But wait a minute. Isn't that possession all with the Grand Am? Yes, that's all with the Grand Am. And that's one continuous conspiracy from the time they take possession of the Grand Am until the collision. That's your... That's correct. But there's another conspiracy, which is with the Chevy Suburban in the morning. That's the distinct conspiracy. That's where they get up and say, we're going to go steal a car. So they had done the second adventure, as you call it, with the Suburban. It's one conspiracy? Yes, that is one conspiracy, yes. And it's a continuing... So your position, because they changed cars, that's what you're hanging your hat on? Because they changed cars, they went back to Tyler Mannings to retain possession but to maybe do something different. And then the fact that even Tyler Mannings, who is, you know, uncharged but seems to be a co-conspirator in some of these prior occasions, he's asking them, what do you plan to do now that you're taking a car to drive around? Or what are you doing? And that shows, too, that this was not necessarily a foregone conclusion that they were continuing what they were doing. They instead took a break, brought that car home, not home but to Tyler Mannings or near Tyler Mannings' house, took another car, decided to go out and do this. Just so I'm clear, though, if they had stayed with the Suburban, your position would be it's one conspiracy? Oh, if they had stayed with the Suburban throughout? Yes. And then never possessed another car? And what if they had not come back to the home? What if they stopped at McDonald's? Does that make a difference? No, because they are not relinquishing control and showing a mindset. That's my question. So you're hanging your hat on the fact that they relinquished possession of the Suburban and took possession of a different vehicle? I'm hanging my hat on that along with additional facts, which are that going along and allowing for a reasonable inference that that was the… What's the that? The reasonable inference has come from the conversation they had with Tyler Mannings showing that it was not even evident to him that, in fact, what they wanted to do now with their afternoon plans and with their plans from here on in, that they were taking a different car. They were possessing that car. But for what purpose? The same purpose they had the Suburban for. Well, for a similar purpose, yes, absolutely. But under the facts, looking at it in the light most favorable to the Trier effect, we believe that shows and is sufficient for a showing of multiple conspiracies. And I would direct your attention to Burleson, which I cited in my case. I think they had the closest facts to anything I could find, and I realize it's an older case, a McCulloch Court case, but there the pattern was exactly the same. They were planning to and conspired on two occasions to commit an armed robbery of the same bank. But yet the multiple conspiracies were upheld, although eventually one was vacated unless included of another charge. What was the purpose of having the Suburban? The purpose of having the Suburban? Just to possess? Just to use? Just to use, yeah, as a regular car. And I think maybe I've forgotten one other fact, and that is that you're looking to, is there an overarching purpose? So when these people brought back the Chevy Suburban and parked it near Tyler Manning's house, was there still an overarching purpose that they, you know, that's one act or something, but there's somebody here or somebody above that they're collecting money for or they're using as a fencing? Is there something else going on here that is still ongoing beyond their own immediate purposes? And the answer to that is no, and I think that also is a factor to consider in determining that this was a case of multiple conspiracies rather than one with an overarching purpose. How would we distinguish these facts from a situation where there's numerous drug deliveries and yet one begins, it ends. One begins, it ends. It begins, it ends. Each transaction. Yes. That seems to be or to have an overarching purpose. It does. Why is this different? Well, because they are not answering to anyone. They are not using this as a means of Which they? The drug dealers or? The defendant in this case. Okay. There's no one or no group to which they're answering, of which they're a cog in the wheel, such that when they complete something, there's still somebody else to be answered to because there's actually a larger purpose to it. There's nothing like that in this case. So they don't answer to Manning? No, there's no indication that they do. And with that in mind, I think that that also shows that this can be divided, this activity can be divided and was properly divided into multiple conspiracies by the trial court. For that reason, we would ask your honors to affirm the convictions and, of course, with the exception of count six and seven, which should be remanded for a determination of which count should be vacated on our confession of error. Thank you. It was the same sentence on both six and seven, but still your position is it should be remanded? Well, your honors, I'm looking at one-on-one crime, which is not exactly applicable, but in the determination. We have to vacate more. Exactly. Your honors have to vacate more. If your honors believe that it's necessary to remand for that determination, given that they're both the same class and fairly much the same facts, then we would ask that it be remanded. Okay. Do you wish to reply? This is regarding the existence of the conspiracy, the class one conspiracy. The defendant isn't denying that you can infer an element of an offense from the conduct, but the problem here is the fact, in this situation, the fact that they fled and eluded is not evidence either direct or circumstantial that they agreed to do so beforehand. And I think that's the essential element here, particularly when there's evidence to the contrary. Not only the elements cited before, the Hightower, I think, said that he wanted to scoot over and pull over or slow down and pull over. And, in fact, that statement was made when the police were behind Hightower. So he made that point when. I think it's kind of clear that Hightower did not want to, may have wanted to get away. It doesn't necessarily stem from that, that that means they were going to leave the police on a high-speed chase. Butler testified he didn't even see the police behind them until he had been in the car, that when they were in the parking lot going through cars, looking into windows, they were unaware of the police presence. It suggests then that they, at that point, somehow agreed to hop in the car and flee and elude police by doing speeds of over 21 miles an hour while disregarding stop signs, seems to be. That's if you believe him. That's if you believe him. And that is an issue for the trier of fact. That's true. But it is a state's witness. The state brought this witness forward. The state seemed to believe. That doesn't matter. They might not have believed him. They may not have believed him. Well, even if they didn't believe him, the main point here is that there's just not evidence to suggest that an agreement was made beforehand. There's arguably, I guess, in that case, if you don't believe him, there's arguably evidence that that actually destroys the conspiracy. But there's certainly not evidence to suggest that it existed. The state said that they acted on impulse, and that's probably to some extent true. But there, again, impulsive behavior does not lend itself to a conspiracy, the agreement beforehand to do these specific acts. The state also said that they didn't do anything to separate themselves. But at that point, there's really not much other than what high power did, which was, say, scoot over and slow down. There's not much you can do in the speeding vehicle to separate yourself. So for that reason, we would ask that because they didn't prove the existence of more than one conspiracy to possess a stolen motor vehicle, and because they failed to prove that the parties agreed to commit the elements of aggravated possession of a stolen motor vehicle, we request that this Court reduce this conviction to one of the last two vehicle theft conspiracies, and remand for re-sentencing. Thank you very much. Thank you both for your arguments. We'll be in short recess and a written decision in due time.